UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TAUNYA A.,

    Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 3:24-cv-05038-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's applications for supplemental security income (SSI) benefits and disability insurance benefits (DIB). The parties have consented to have this matter heard by the Magistrate Judge. *See* Dkt. 5. Plaintiff challenges the ALJ's decision finding plaintiff not disabled. Dkt. 9, Complaint.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed claims for SSI and DIB in August 2016, alleging disability beginning June 17, 2016. Administrative Record (AR) 192–93, 789. After her applications were denied at the initial level and on reconsideration (AR 69–124), a hearing was conducted before ALJ Joanne Dantonio in November 2018 (AR 34–68) and ALJ Dantonio issued an unfavorable decision in January 2019 (AR 12–33) which was reversed on appeal by U.S. Magistrate Judge David Christel (AR 920–32). On remand, ALJ Allen Erickson (the ALJ) held another hearing on June 22, 2023. AR 816–65.

The ALJ issued a decision denying benefits on September 14, 2023. AR 786–815. In his written decision, the ALJ found plaintiff had the severe impairments of bilateral knee degenerative joint disease and status post abdominal wall surgery. AR 792. He found plaintiff had the residual functional capacity (RFC) to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional climbing of ladders, ropes, and scaffolds; occasional crawling; occasional exposure to vibration; and occasional exposure to extreme cold temperatures.

AR 799. Plaintiff did not file exceptions with the Appeals Council, making the ALJ's decision Commissioner's final decision subject to judicial review. *See* 20 C.F.R. §§ 404.984(a), 416.1484(a). Plaintiff appealed to this Court. *See* Dkt. 9 (Complaint).

The ALJ found that plaintiff could perform her past relevant work of being a Buffet Waitress (which she had done from 2013 to 2014). AR 805. The ALJ determined, based on the Vocational Expert's testimony, that plaintiff could perform this work as generally and actually performed. AR 805-806.

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and

evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason on which the ALJ did not rely. *Id.*

**A. Plaintiff's Statements about Symptoms and Limitations**

Plaintiff testified that, due to her impairments, she could stand for 15 to 30 minutes at a time; sit for 30 minutes at a time; walk two city blocks; perform chores requiring standing and walking for about 10 minutes before requiring a break; and lift no more than 10 pounds. AR 54–55, 854–55. She testified she spends over 70% of the day lying down to relieve the tension on her skin and knees. AR 852.

The ALJ was required to give specific, clear, and convincing reasons for rejecting plaintiff's testimony. *See Garrison*, 763 F.3d at 1163; AR 800. Commissioner argues the ALJ met this burden by pointing to (1) evidence of improvement in plaintiff's condition; (2) inconsistencies between the objective medical evidence and plaintiff's testimony; and (3) plaintiff's activities of daily living. Dkt. 22 at 11–13.

<u>Improvement</u>. The ALJ rejected plaintiff's testimony because she "experienced good response to [steroid] injections." AR 803. The record reflects that plaintiff received three injections between 2020 and 2022 (*see* AR 1877) and showed they provided "100% relief for 4 to 6 weeks" (AR 1855) and continued to provide some relief after that (with "about 50% improvement at 5 months," *see id.*). The record also suggests she was ineligible for repeat injections until August 2022. *See* AR 1885 ("At this point [in August 2022] we believe patient meets the criteria to consider repeat steroid injections in the future[.]").

At most, this supports a finding that plaintiff's symptoms were completely relieved for about 18 weeks of the relevant period and she otherwise experienced some

1  improvement after 2020, when she first received injections. Yet this is insufficient to

2  establish her conditions were not as severe as alleged after 2020. *See Holohan v.*

3  *Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[S]ome improvement" in a person's

4  symptoms "does not mean that the person's impairments no longer seriously affect her

5  ability to function in a workplace."). And this does not show plaintiff had any relief before

6  her first injection in 2020, so it is not a valid reason for rejecting her testimony or finding

7  her ineligible for benefits for the first four years of the relevant period.[1]

8        <u>Objective Medical Evidence</u>. The ALJ summarized much of the medical evidence

9  and then stated he was rejecting plaintiff's testimony because, "while she at times has

10 presented with reduced knee range of motion and antalgic gait, primary care provider

11 records and other exam often document observations like normal gait, strength, and

12 range of motion." AR 803. The ALJ noted an MRI in March 2017 showed "a complex

13 tear of the claimant's left knee medial meniscus". AR 801. The ALJ also noted surgical

14 repair of the torn meniscus in April 2017 and as of October 2017, the MRI showed no

15 significant tearing of the left knew meniscus. AR 801. The ALJ noted injections given to

16 plaintiff several times between 2017 and 2022, for pain in both knees. AR 801-802.

---

[1] A claimant is entitled to benefits if their medically determinable impairments prevent them from performing substantial gainful activity for at least twelve months. *See* 42 U.S.C. § 1382c(3)(A); 20 C.F.R. § 416.905(a); *id.* § 416.909. For this reason, if the ALJ found her impairment resolved but was nonetheless severe for twelve or more months, the ALJ was required to consider whether Plaintiff was entitled to benefits for the limited period before the impairment resolving. *See e.g.*, *Courtny R. v. O'Malley*, 2024 WL 1269480, at *11 (S.D. Cal. 2024) ("District courts have recognized an ALJ must consider a closed period of disability if evidence supports a finding that a person is disabled for a period of at least twelve months.") (collecting cases); *Calhoun v. Colvin*, 959 F. Supp. 2d 1069, 1075 (N.D. Ill. 2013) ("'[T]he disability inquiry must be made throughout the continuum that begins with the claimed onset date and ends with the hearing date, much as though the ALJ were evaluating a motion picture at every frame of that time period instead of . . . a snapshot taken [at] the hearing.").

1    The ALJ noted with respect to the abdominal wall surgery, that plaintiff had the surgery in 2014 and "healed well". AR 802. During the relevant period between the Fall of 2016 and the date of the hearing in June 2023, the ALJ determined there were medical records showing "focal pain at the scar", and abdominal tenderness, but the ALJ found that in April 2022 an examination did not reveal any abdominal tenderness. AR 802.

This evidence is not necessarily inconsistent with plaintiff's testimony, and the ALJ erred in failing to explain why it was. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) ("[T]o satisfy the substantial evidence standard, the ALJ must...explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony.") (emphasis in original). Medical evidence of a normal gait and strength do not show plaintiff would not experience pain from prolonged walking, sitting, and standing.

The ALJ acknowledged abnormal findings, but erred by failing to explain why he found the cited normal findings more probative of plaintiff's condition than those abnormal findings. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("[The ALJ] simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited.").[2]

---

[2] Defendant points to the "lack of muscle wasting" as being inconsistent with plaintiff's testimony, but the ALJ did not discuss this reason, so the court cannot affirm on this basis. *Garrison*, 759 F.3d at 1009. Defendant also points to one treatment note which the ALJ described as an "observation[] of [plaintiff]

5

      The medical evidence showed plaintiff experienced pain that the physician associated with "contracture as well as neuropathic pain." AR 303 (Notes of Dr. Bethanie R. White, MD, dated 9-21-2016; see also AR 312, notes of examination on 9-8-2016, by ARNP Elizabeth Siegel, documenting plaintiff's low abdomen pain that causes discomfort in many positions). Dr. White notes that the pain was worse when plaintiff stretched out her abdomen, participates in physical activity, or lies flat. *Id.* In November 2016, D. James L. Reus, MD advised plaintiff that a pain clinic referral should be considered, to address chronic abdominal pain. AR 336-337. Dr. White evaluated plaintiff for chronic abdominal pain and advised plaintiff that she would refer her to a pain management clinic, on April 5, 2017. AR 340, 364-365. In May 2021, Angela Minor, PA-C, observed that plaintiff had a "thick, transverse scar across entire lower abdomen" and it was tender to palpation. AR 1729-1732.

      Dr. L. Antony Agtarap, MD evaluated plaintiff's left knee on February 22, 2017, and found an MRI was necessary. AR 355. The MRI of plaintiff's left knee was performed on March 14, 2017 (based on pain reported by plaintiff after a twisting injury on 11/8/2016) and Dr. Gupta reported the "Complex oblique tear of posterior horn of medical meniscus, with overlapping meniscal fragments and associated degeneration of the posterior body. . ." and other findings. AR 361-362. Dr. Agtarap performed a three

---

changing her gait from normal to limping when coming into a physical therapy clinic." AR 804 (citing AR 728–29). It is unclear whether this is the meaning of the note in question or whether the import of the note was that plaintiff's symptoms varied. *See* AR 728 (plaintiff "continued ongoing normal gait followed by limping when coming into clinic on an ongoing basis"); *id.* ("Can walk only (1 to 10) yards without symptoms at times; at other times she limps with very short walks," "recommend referral back to her PCP as symptoms wax and wane"). Even so, the ALJ did not indicate this was a basis for rejecting plaintiff's testimony and so it is not a basis on which this court can affirm.

port arthroscopy and used a shaver and resectors to repair the left knee meniscus damage on April 13, 2017. AR 370.

Dr. Agtarap reported bilateral osteoarthritis of the knees, after a December 17, 2019 evaluation of plaintiff, and administered injections to plaintiff's knees March 13, 2020, March 14, 2022, and October 24, 2022. AR 1213, 1873, 1888. Also on August 27, 2022, Dr. Agtarap noted plaintiff had pain in the left knee and the right knee, including "patellofemoral grinding and popping". AR 1885. Dr. Pooja M Patel, MD diagnosed plaintiff with chronic pain of the right knee after an examination on February 26, 2021. AR 1786. Dr. Patel observed on February 13, 2023 that plaintiff's painfulness of the left knee was affecting her gait, causing back pain. AR 2033-2034.

<u>Activities of Daily Living</u>. The ALJ pointed to evidence plaintiff could garden, walk, hike, shop, and complete some self-care activities of daily living. AR 803. This evidence does not clash with plaintiff's testimony. The activities cited do not involve the sorts of prolonged physical exertion plaintiff stated she could not accomplish. As Judge Christel noted in rejecting a similar finding made by Judge Dantonio, "the record indicates that plaintiff often relied on crutches or knee braces to walk, and further indicates that plaintiff suffered more intense knee pain after walking for significant periods of time." AR 928 (citing AR 52, 54, 429). Plaintiff also testified in her second hearing that she relied on the helpful friends who lived nearby, to assist her with activities of daily living. *See* AR 845–46.

The ALJ failed to offer specific, clear, and convincing reasons for rejecting plaintiff's subjective symptom testimony about her abilities to lift, sit, stand, and walk.[3] Because plaintiff's testimony indicates she is further limited than as described in the RFC, this error is not harmless. *See Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988).

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's assessment of the medical opinions of consultative examiner Terilee Wingate, Ph.D.; consultative examiner Angela Minor, PA-C; state agency non-examining psychological consultants Gary Nelson, Ph.D., and Bruce Eather, Ph.D.; and several state agency non-examining medical consultants. Dkt. 16 at 3–11.[4]

Plaintiff filed her applications before amended regulations went into effect on March 27, 2017; under the applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

---

[3] Plaintiff also contends the ALJ failed to provide specific reasons for rejecting her testimony about her shoulder and trigger finger symptoms (Dkt. 16 at 5) but the ALJ found these impairments non-severe based on the medical evidence (*see* AR 794) and plaintiff does not make any argument challenging this finding (*see* Dkt. 16).

[4] Plaintiff also summarizes some of the rest of the medical evidence but raises no argument in doing so. *See* Dkt. 16 at 5–10. The Court declines to assess this evidence, as it will not consider matters that are not "specifically and distinctly" argued in the plaintiff's opening brief. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)).

(citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

        1. <u>Drs. Wingate, Nelson, and Eather</u>

Although ALJ Dantonio found plaintiff had a severe impairment of unspecified anxiety disorder at step two (*see* AR 18), on remand the ALJ found plaintiff's anxiety and depression were not severe impairments. *See* AR 792, 795. An ALJ may find an impairment or combination of impairments 'not severe' at step two '*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023) (quoting *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)) (emphasis in original). When considering whether a mental impairment is severe at step two, an ALJ rates a claimant's limitations in four areas (the Paragraph B areas) as none, mild, moderate, marked, or extreme and, if plaintiff does not have at least a moderate limitation in at least one area, the impairment is generally found non-severe. *See* 20 C.F.R. §§ 404.1520a(c)(4); 404.1520a(d)(1).

Here, the ALJ found plaintiff had a mild limitation in concentrating, persisting, and maintaining pace and otherwise no limitations in the other Paragraph B areas. AR 795–96. In making this finding, he considered and rejected the opinions of Drs. Wingate, Nelson, and Eather. *See* AR 797–98.

Dr. Nelson opined plaintiff was moderately limited in her abilities to sustain concentration and persistence and interact with others. AR 906. Dr. Eather opined plaintiff was moderately limited in her abilities to understand and remember and sustain concentration and persistence. AR 945. Dr. Wingate opined plaintiff would have "some

difficulty sustaining attention to tasks" and "would probably not work well with the general public." AR 433.

The ALJ rejected these opinions, repeating the same rationale for each. First, the ALJ found the opinions inconsistent "with the claimant's own testimony at the June 2023 hearing that her mental health has not been a significant issue since 2017." AR 797, 798; *see also* AR 842–43 (Plaintiff testified her mental health issues were "not significant" beginning at the end of 2017 or beginning of 2018). Yet her statement that the mental health conditions were "not significant" does not mean they had "no more than a minimal effect" on her ability to work after 2017. *Glanden*, 86 F.4th at 844.

Plaintiff testified she had issues with comprehension after 2017 (AR 42, 855) and experienced depression (AR 843). Even assuming, for purposes of this analysis, the ALJ properly found plaintiff's statement shows that her mental impairments were non-severe, plaintiff said this was only true (at the earliest) starting at the end of 2017, eighteen months after her alleged onset date (AR 842). Therefore, her testimony would still support a determination at step two of a severe mental health condition, and symptom-related limitations during the relevant period. *See* note 1, *supra*.

Second, the ALJ found the opinions were

> not consistent with the longitudinal record. Consultative examination reports document observations like pleasant, calm, and cooperative behavior, fair to normal fund of knowledge, intact memory, at least low to average intelligence, adequate focus and concentration, good abstract reasoning, and an ability to recall 3/3 and 3/4 words after a delay, and the fourth with a category clue, calculate serial numbers with minor or no errors, spell "world" backward, digit span 6 forward and 3 backward, and follow a 3-step command [AR 430–34, 1716–25].

AR 798; *see also* AR 797 (rejecting Drs. Nelson and Eather's opinion for same reason with slightly different language). The ALJ similarly rejected the opinions based on

1  "consistently normal mental status observations in medical treatment records." AR 797,
2  798 (citing AR 370, 401, 715, 1234, 1236, 1240, 1250, 1282, 1456, 1606, 1610, 1614,
3  1617–46, 2024, 2034, 2042, 2046–69).

4        This finding was not supported by substantial evidence. The two consultative
5  examination reports cited were the consultative examinations performed by Dr. Wingate
6  and PA Lynnette McLagan. *See* AR 430–34, 1716–25. Although those examinations
7  had mostly normal findings, there was also documentation of plaintiff having some
8  impairments or "fair" abilities with respect to her memory, attention, insight, and
9  knowledge. *See* AR 432 (attention "was fair," issues repeating digits backward, made
10 one error in serial 3s and 7s, remembered 3 of 4 words after delay, "fair" fund of
11 knowledge); 1721–22 (insight "fair," delayed recall, some abnormal results in immediate
12 memory). This evidence is not inconsistent with a moderate limitation in some of the
13 Paragraph B areas, because a moderate limitation means a claimant's abilities in an
14 area are "fair." *See* Listings 12.00(F)(2)(c). PA McLagan interpreted the results as
15 suggesting plaintiff had "fair" abilities, consistent with such a limitation. *See* AR 1723.

16       The "consistently normal mental status observations" finding by the ALJ is not
17 supported by the record. The records cited involved physical examinations and
18 appointments; none involved a mental status examination testing plaintiff's memory,
19 attention, or judgment. And none provided results contradicting the "fair" abilities
20 documented in the consultative exams.

21       Although some records indicated plaintiff was alert, cooperative, pleasant, and
22 had normal mood, such evidence is not probative as to plaintiff's attention. Although
23 notations that she was cooperative and pleasant may suggest she can interact with
24
25

1  others, such notations are not substantial evidence to show she has a greater than "fair"
2  ability to do so.
3       Third, the ALJ discounted the opinions as inconsistent with plaintiff's course of
4  treatment: she "testified to a few months of counseling" (AR 798) but she otherwise had
5  "no formal mental health treatment" (AR 797, 798). A conservative course of treatment
6  "can undermine allegations of debilitating pain" and other symptoms, *Carmickle v.*
7  *Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). But the limitations
8  opined by Drs. Wingate, Nelson, and Eather were not debilitating ones. Only seeking "a
9  few months of counseling" is not necessarily inconsistent with having some difficulties
10 with attention and "fair" abilities with respect to attention, understanding, and interaction.
11 *Cf. Webb*, 433 F.3d at 687 ("Although the medical record paints an incomplete picture . .
12 . it includes evidence of problems sufficient to pass the de minimis threshold of step
13 two.").
14      Finally, with respect to Dr. Wingate's opinion, the ALJ noted Dr. Wingate did not
15 "specify the exact degree to which the claimant would be able to sustain attention." AR
16 798. Although an ALJ was found to have properly discounted a limitation because the
17 source's "characterizations were inadequate for determining RFC" in *Ford v. Saul*, 950
18 F.3d 1141, 1156 (9th Cir. 2020), this case is distinguishable because the ALJ was not
19 considering Dr. Wingate's opinion in deciding the RFC but was doing so in determining
20 whether plaintiff's mental impairments met the criteria under step two, for determining a
21 threshold level of severity. The ALJ did not need information about the "exact degree" of
22 the limitations for this purpose.

Dr. Wingate's opinion that plaintiff would have trouble sustaining attention and could not work with the public supports plaintiff having some limitations to a degree beyond "mild" in the Paragraph B areas. *See* Listings 12.00(E)(2) (interacting with others requires public interaction); *id.* § 12.00(E)(3) (concentrate, persist, or maintain pace requires "focus[ing] attention"); *id.* § 12.00(F)(2)(b) (mild limitations appropriate only if claimant "slightly limited" in area).

In sum, the ALJ's reasons for rejecting the opinions of Drs. Wingate, Nelson, and Eather were not legally sufficient or supported by substantial evidence. Because those opinions may affect the step two determination and the evaluation of plaintiff's RFC, the error requires reversal.

### 2. PA Minor and Non-Examining Consultants

PA Minor opined plaintiff could stand or walk for one-hour total and fifteen minutes at a time; had a poor ability to squat, kneel, climb, crawl, and reach above her shoulders; could sit for only four hours in a workday; and cannot push or pull. AR 1734–35.[5] Consultant Norman Staley, MD, opined plaintiff could not stand or walk more than four hours a day and could not climb, crouch, kneel, or crawl. *See* AR 938–47.[6]

The ALJ rejected PA Minor's opinion because it was based on plaintiff's subjective complaints (*see* AR 804); the Court has found the ALJ failed to provide sufficient reasons for rejecting plaintiff's subjective complaints, and for similar reasons, this was not a valid reason for rejecting the opinion of PA Minor. *Cf. Buck v. Berryhill*,

---

[5] PA Minor also opined limitations related to plaintiff's manipulative abilities based on her alleged left trigger finger impairment but the ALJ found that impairment non-severe (*see* AR 794) and plaintiff does not make any argument challenging this finding (*see* Dkt. 16).

[6] Dr. Staley opined several other limitations, which the ALJ largely found persuasive and plaintiff does not challenge the assessment of. *See* Dkt. 16; AR 804.

869 F.3d 1040, 1049 (9th Cir. 2017) ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded where those complaints have been properly discounted.").

The ALJ also pointed to the normal examination results discussed and the relief allegedly provided by plaintiff's knee injections. AR 804. As discussed, the normal examination results cited are not necessarily inconsistent with an inability to stand or walk for prolonged periods. Such evidence is not probative as to the other limitations opined in plaintiff's abilities to crawl, reach, sit, kneel, or climb. And as discussed, the relief provided by plaintiff's injections do not show consistent improvement for the entire relevant period.

The ALJ's rationale for rejecting the relevant portions of Dr. Staley's opinion was deficient for the same reason, as the ALJ based his determination on the same objective evidence showing some normal findings and evidence of plaintiff's injections being effective. *See* AR 804. The ALJ also rejected the opinion because it relied on PA Minor's opinion in part (*see id.*), but having found the ALJ gave no valid reasons for rejecting PA Minor's opinion, this was not a valid basis to reject the opinion.

Thus, the ALJ failed to provide adequate reasons for rejecting the opinions of PA Minor and Dr. Staley. Because those opinions suggest plaintiff is further limited than found by the ALJ, the error requires reversal.

Plaintiff also challenges the ALJ's finding that the opinions of medical consultants Robert Handler, MD, James Irwin, MD, and Howard Platter, MD, were "mostly persuasive." Dkt. 16 at 10–11. Plaintiff argues this is error because the opinions were "inconsistent with subsequent medical treatment records" and the consultants "did not

review any evidence beyond July 2017" (*id.*) but this does not show error. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("[T]he report of a nonexamining, nontreating physician need not be discounted when it is not contradicted by all other evidence in the record.") (quotation omitted, emphasis in original); *Elsey v. Saul*, 782 Fed. App'x 636, 637 (9th Cir. 2019) (unpublished) ("The regulations require that an ALJ evaluate the degree to which a non-examining source considers the evidence, not that a failure to consider all evidence requires the source to be discounted.").

### C. Lay Witness Statement

Plaintiff's significant other submitted a statement in March 2021 describing plaintiff as being in constant pain, unable to lift over 20 pounds, and unable to walk more than a quarter mile without a 5-to-10-minute break. AR 1105–12. Because the ALJ discounted this statement (*see* AR 805) based on reasons found above to be erroneous with respect to plaintiff's testimony and the medical opinions, the ALJ is directed, on remand, to again review this evidence.

### D. Remedy

Plaintiff argues the case should be remanded for an award of benefits. Dkt. 16 at 19. Yet, there are ambiguities in the record in relation to determining those portions of the relevant period plaintiff when experienced symptoms of mental conditions, and those parts of the relevant period when plaintiff's physical symptoms were resolved through steroid injections. Remand is required for the ALJ to resolve such issues. *See Dominguez v. Colvin*, 808 F.3d 403, 409–10 (9th Cir. 2015) (as amended) ("When further proceedings are necessary to determine the onset date, it is appropriate to remand for those proceedings.").

Plaintiff also asks the Court to order a new ALJ be assigned to the case. Dkt. 16 at 19. An affidavit from her attorney indicates all the 35 most recent decisions issued by the ALJ involving her attorney were unfavorable or partially favorable. Dkt. 16-1. She argues this shows bias. Dkt. 16 at 19. Plaintiff also argues in the reply brief that a new regulation, 20 C.F.R. § 404.1565(a) (June 8, 2024) should be applied, and this would mean plaintiff's past relevant work would be excluded at step four. Dkt. 26 at 8-9.

Plaintiff failed to raise the argument about bias of the ALJ during proceedings at the agency level. *See* 20 C.F.R. § 404.940 ("If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge *at your earliest opportunity*.") (emphasis added); *Sims v. Apfel*, 530 U.S. 103, 108 (2000) ("[W]hen regulations [require issue exhaustion], courts reviewing agency action regularly ensure against the bypassing of that requirement by refusing to consider unexhausted issues.") (citations omitted); *see also White v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022) ("failure to raise an issue 'at both [the] hearing before the ALJ and the Appeals Council' constitutes forfeiture") (citing and quoting *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)).

Regarding the argument that the Commissioner should apply 20 C.F.R. § 404.1565(a), this was raised for the first time in plaintiff's reply brief. Therefore, it is not properly before the Court.

//
//
//
//

CONCLUSION

The Court concludes the ALJ improperly determined plaintiff to be not disabled. The ALJ's decision is reversed and remanded for further administrative proceedings, including a de novo hearing and the opportunity to submit additional evidence.

Dated this 3rd day of February, 2025.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge